# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### October 4, 2012 Session Heard at Nashville

# SAUNDRA THOMPSON v. MEMPHIS CITY SCHOOLS BOARD OF EDUCATION

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Shelby County**
**No. CH-07-1926-3    Arnold B. Goldin, Chancellor**

---

**No. W2010-02631-SC-R11-CV - Filed December 21, 2012**

---

We granted this appeal to determine whether a tenured teacher's failure to return from sick leave amounts to a constructive resignation or a forfeiture of tenure. We hold that, although a tenured teacher's failure to return from sick leave may constitute cause for termination, there is no statute authorizing a board of education to deem it a constructive resignation or a forfeiture of tenure. Accordingly, by dismissing the plaintiff tenured teacher without providing her with written charges or an opportunity for a hearing, the defendant board of education violated her rights under the Tennessee Teacher Tenure Act and her constitutional right to due process of law protected by the Fourteenth Amendment of the United States Constitution. Thus, the plaintiff is entitled to reinstatement, back pay consisting of her full salary, compensatory damages for the actual harm she sustained, and attorney's fees. Accordingly, we reverse in part the judgment of the Court of Appeals, reinstate the judgment of the trial court, and remand to the trial court for proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed in Part; Judgment of the Trial Court Reinstated; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Richard L. Colbert and Courtney L. Wilbert, Franklin, Tennessee, for the appellant, Saundra Thompson.

Robert L. J. Spence, Jr., Memphis, Tennessee, for the appellee, Memphis City Schools Board of Education.

**OPINION**

**Factual and Procedural History**

Saundra Thompson began working as a teacher for the Memphis City Schools Board of Education ("Board") in February of 1987. After attaining permanent tenure,[1] Ms. Thompson requested and received sick leave for a portion of the 2004-2005 school year and for the entirety of the 2005-2006 school year. Ms. Thompson returned to work in August of 2006 and continued working without incident through October, at which time she requested and received sick leave until January 2, 2007.

However, Ms. Thompson did not return to work on January 2, 2007. The parties disagree on whether Ms. Thompson requested additional sick leave before or after failing to return to work on January 2, 2007. Ms. Thompson attached as an exhibit in support of her motion for partial summary judgment a letter from her physician, dated January 3, 2007, requesting an extension of her sick leave. Along with this letter, Ms. Thompson's attorney submitted an affidavit stating that the letter had been produced by the Board during discovery from the personnel file the Board maintained for Ms. Thompson. The Board has denied Ms. Thompson ever requested an extension of her sick leave.

In any event, on April 11, 2007, Mr. Von W. Goodloe, a Labor Relations Administrator for the Board, wrote a letter to Ms. Thompson, stating as follows:

> This letter is the result of the documentation received in the Division of Employee Relations. According to the documentation, you have not reported to work or contacted your Principal since January 2, 2007. Additionally, you have not applied for a leave of absence through the Division of Human Resources.
>
> I find that discipline is warranted in this case. Therefore, on behalf of the Superintendent, your employment is hereby terminated effective January 2, 2007.

On April 23, 2007, a staff attorney for the Tennessee Education Association ("TEA") wrote the Director of Schools for the Memphis City Schools on Ms. Thompson's behalf, advising that the termination violated several provisions of the Tennessee Teacher Tenure

---

[1] According to Ms. Thompson's affidavit, she attained tenure in 1991. It is undisputed that she had attained tenure prior to the events giving rise to this appeal.

Act ("Tenure Act"), Tenn. Code Ann. §§ 49-5-501 to -515 (2002),[2] including Ms. Thompson's right to receive written notice of the charges against her, id. § 49-5-511(a)(4), her right to receive a document prepared by the Commissioner of the Department of Education summarizing her rights and recourse under the Tenure Act, id. § 49-5-511(a)(5), and her right to receive a pre-termination hearing before the Board, id. § 49-5-512(a). To preserve Ms. Thompson's rights, the TEA staff attorney requested a hearing before the Board. The April 23, 2007 letter went unanswered, as did a similar June 4, 2007 letter from the TEA staff attorney reiterating Ms. Thompson's rights under the Tenure Act.

Having received no response to these letters, on September 28, 2007, Ms. Thompson filed a complaint in the Chancery Court for Shelby County alleging that her dismissal violated both the Tenure Act and her right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. See U.S. Const. amend. XIV, § 1. For the alleged violation of her statutory rights, Ms. Thompson sought reinstatement, back pay, and an injunction preventing the Board "from bringing any of the charges [that were] contemplated in the April 11, 2007 letter against Ms. Thompson at any time in the future." For the alleged constitutional violation, Ms. Thompson sought compensatory damages pursuant to 42 U.S.C. § 1983 and attorney's fees pursuant to 42 U.S.C. § 1988. Ms. Thompson did not request a hearing before the Board.

In an answer filed December 21, 2007, the Board admitted that Ms. Thompson had acquired tenure as a teacher in the Memphis City Schools. The Board denied, however, that it had refused to schedule a hearing for Ms. Thompson and stated that it was "presently seeking to schedule a hearing." The Board also denied violating Ms. Thompson's constitutional right to due process, but admitted that all of its actions regarding Ms. Thompson's employment were state action for purposes of the Fourteenth Amendment and were taken under color of state law as that phrase is used in § 1983.

On April 23, 2009, Ms. Thompson moved for partial summary judgment, arguing that the undisputed facts established that she had been dismissed in violation of both the Tenure Act and her constitutional right to due process. As support for her motion, Ms. Thompson relied on the October 18, 2008 depositions of Mr. Goodloe and Ms. Kimkea Harris, who, like Mr. Goodloe, worked as a Labor Relations Administrator for the Board in 2007.

---

[2] In this appeal we interpret and apply the Tenure Act in effect at the time these events occurred in 2007. See Tenn. Code Ann. §§ 49-5-501 to -515 (2002). Unless otherwise indicated, statutory citations in this opinion cite the law in effect in 2007. To the extent the language of the current Tenure Act, Tenn. Code Ann. §§ 49-5-501 to -515 (2009 & Supp. 2012), differs from the law applicable in 2007, our decision in this appeal applies only to the law in effect in 2007.

The Board retained new counsel in late June of 2009, and Ms. Thompson agreed to delay a hearing on her motion for partial summary judgment to allow the Board's new lawyer to become familiar with the case. On July 31, 2009, the Board, through counsel, wrote Ms. Thompson stating that, while the Board believed she was not entitled to a hearing, the Board would be willing to schedule a hearing to accommodate her earlier requests.

On August 3, 2009, the Board moved to amend its answer to allege that Ms. Thompson's failure to return to work on January 2, 2007, amounted to a constructive resignation by which she abandoned, rescinded, or breached her employment contract and forfeited tenure. Ms. Thompson filed a response in opposition to the Board's motion, and on September 11, 2009, the trial court denied the Board's motion to amend, finding it futile and unduly prejudicial.

On August 18, 2009, the Superintendent of the Memphis City Schools sent Ms. Thompson written notice that charges of incompetence, inefficiency, and neglect of duty had been presented to the Board, and that these charges, if true, would warrant her dismissal under the Tenure Act. The charges were described in documents attached to the notice. In general, the charges were based on Ms. Thompson's failure to return from sick leave on January 2, 2007, her alleged inability on December 17, 2004, to manage her classroom, as well as her alleged ineffective instructional strategies, unprofessional behavior, and inappropriate communication skills on that date, and her alleged failure on October 29, 2004, to establish procedures and routines and to create an environment conducive to learning. The Board scheduled a hearing on these charges for September 22, 2009.

Ms. Thompson refused to participate in the hearing and applied to the trial court for a preliminary injunction to prevent it. Ms. Thompson argued that a hearing before the Board two years *after* her dismissal and the filing of her lawsuit was an inadequate remedy for the Board's violation of her statutory and constitutional rights. The Board opposed Ms. Thompson's request for injunctive relief, arguing that she had consistently requested a hearing before the Board since her dismissal.

At the conclusion of a September 23, 2009 hearing, the trial court orally granted Ms. Thompson's application for a preliminary injunction. In a subsequent October 26, 2009 order memorializing its decision, the trial court stated:

> The Court finds that Ms. Thompson is not an employee of the [Board] and has not been an employee of the [Board] since her employment ended in 2007. The Court concludes that the procedures in Tenn. Code Ann. §§ 49-5-511 and 49-5-512 pertaining to the dismissal of a tenured teacher do not apply in the case of a teacher who is no longer an employee of the school system, and

therefore concludes that the hearing sought to be enjoined would be contrary to law *until such time as Ms. Thompson is reinstated as an employee of the [Board]*.

(Emphasis added.)

On the same day the trial court orally granted Ms. Thompson injunctive relief, the Board sent a letter purporting to reinstate Ms. Thompson but immediately suspend her without pay pending a November 6, 2009 hearing on the charges described in the Superintendent's letter of August 18, 2009.

Ms. Thompson appeared at the hearing, but she argued that the purported reinstatement was ineffective. The hearing was suspended to allow the parties to seek clarification from the trial court as to the meaning of the term "reinstated" used in the trial court's October 26, 2009 order. On April 1, 2010, the Board asked the trial court to clarify the term,[3] and Ms. Thompson filed a response to the request, arguing that she had not actually been reinstated because she had not been paid back pay, given an assignment, or required to complete the paperwork necessary for employment.

On April 21, 2010, the trial court clarified that the term "reinstated" should be "construed as the term 'reinstatement' is used in Tenn. Code Ann. § 49-5-511(a)(3), requiring the payment of the full salary without offset as that statute has been interpreted in Bates v. Deal, 728 S.W.2d 326 (Tenn. 1987), and Jones v. Brown, 727 S.W.2d 497 (Tenn. 1987)." After the trial court ruled, the Board refused to reinstate Ms. Thompson and made no further attempt to schedule a hearing on the August 18, 2009 charges against her.

Meanwhile, Ms. Thompson's April 23, 2009 motion for partial summary judgment remained pending. Also pending before the trial court were the Board's October 2, 2009 motion to dismiss Ms. Thompson's constitutional claim for failure to state a cause of action under §1983 and the Board's May 12, 2010 motion for summary judgment.

On July 9, 2010, the trial court held a hearing on all the pending motions. By an order filed August 11, 2010, the trial court denied the Board's motion to dismiss and motion for summary judgment but granted Ms. Thompson's motion for partial summary judgment. The trial court concluded that the Board had violated Ms. Thompson's rights under the Tenure Act and her constitutional right to due process. As a remedy for the statutory violation, the trial court awarded Ms. Thompson reinstatement and back pay to January 2, 2007. As for

---

[3] Ms. Thompson filed for bankruptcy, and these proceedings were stayed from December 2, 2009, until February 4, 2010.

the constitutional violation, the trial court found Ms. Thompson was entitled to recover compensatory damages for any actual harm she sustained and attorney's fees as a prevailing party on her § 1983 claim. 42 U.S.C. § 1988. The trial court scheduled a hearing to determine the amount of damages.

At the hearing on damages, Ms. Thompson described the mental anguish she had suffered as a result of her improper dismissal. The Board stipulated the amount of accumulated sick leave, retirement, and salary benefits to which Ms. Thompson would have been entitled had her employment not been terminated effective January 2, 2007. The trial court awarded Ms. Thompson back pay under the Tenure Act of $227,802.10, compensatory damages pursuant to § 1983 of $3500 for "career ladder supplemental pay," credit for thirty-five sick leave days, as well as all retirement and salary benefits that would have accrued had Ms. Thompson's employment not been terminated on January 2, 2007, compensatory damages of $5000 for mental anguish, attorney's fees of $80,426.25, and litigation expenses of $8691.14.

The Board appealed, raising numerous issues. The Court of Appeals affirmed the trial court's decision denying the Board's motion to dismiss and motion for summary judgment but vacated the trial court's decision granting Ms. Thompson summary judgment. Thompson v. Memphis City Sch. Bd. of Educ., No. W2010-02631-COA-R3-CV, 2012 WL 134245 (Tenn. Ct. App. Jan. 18, 2012). The Court of Appeals determined that a factual dispute existed as to whether Ms. Thompson "actually requested more sick leave prior to her termination, or whether, in not doing so, she forfeited her tenure." Id. at *11. The Court of Appeals remanded Ms. Thompson's Tenure Act claim to the trial court "with directions to remand to the Board for a full evidentiary hearing pursuant to Tennessee Code Annotated [s]ection 49-5-512(a)." Id. at *13. The Court of Appeals also remanded Ms. Thompson's constitutional claim to the Board. The intermediate appellate court explained that "central to the determination" of the constitutional claim was the issue of whether Ms. Thompson "possessed a property interest in her continued employment at the time the Board took action," id. at *12, or whether she had "voluntarily abandoned her employment by failing to provide notice that she did not intend to return from sick leave thirty days prior to her return date." Id. If the Board determined that Ms. Thompson possessed a property interest in continued employment, the Court of Appeals directed the Board next to determine whether it "was legally entitled to terminate Ms. Thompson's employment." Id. If so, the Court of Appeals explained, Ms. Thompson would be entitled only "to compensatory damages for her actual injuries and nominal damages for the denial of due process itself." Id.

We granted Ms. Thompson's application for permission to appeal.

**Standard of Review**

This case has been appealed from the trial court's grant of summary judgment and award of damages to Ms. Thompson. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; see also Martin v. Norfolk S. Ry., 271 S.W.3d 76, 83 (Tenn. 2008). The moving party bears the burden of establishing that summary judgment is appropriate as a matter of law because no genuine issues of material fact are in dispute. Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). In adjudicating motions for summary judgment, courts must view the evidence in the light most favorable to the nonmoving party and resolve doubts concerning the existence of genuine issues of material fact in favor of the nonmoving party. Martin, 271 S.W.3d at 84. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." Byrd, 847 S.W.2d at 215. We review de novo with no presumption of correctness a trial court's decision on a motion for summary judgment. Martin, 271 S.W.3d at 84. De novo review also applies to the issues of statutory construction presented in this appeal. Mills v. Fulmarque, Inc., 360 S.W.3d 362, 366 (Tenn. 2012). We review the trial court's findings of fact regarding damages de novo with a presumption that the findings are correct, unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d).

**Analysis**

Tenure Act

The Legislature has plenary and exclusive authority to establish the makeup and structure of Tennessee's system of free public schools. Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ., 244 S.W.3d 302, 310 (Tenn. 2007); S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ., 58 S.W.3d 706, 711 (Tenn. 2001); Bd. of Educ. v. Shelby Cnty., 292 S.W. 462, 464 (Tenn. 1927). In the exercise of that authority, the Legislature enacted the Tenure Act in 1951. Act of Feb. 27, 1951, ch. 76, 1951 Tenn. Pub. Acts 292, 292-305. The primary purpose of the Tenure Act is "'to protect school teachers from arbitrary demotions and dismissals.'" Cooper v. Williamson Cnty. Bd. of Educ., 746 S.W.2d 176, 179 (Tenn. 1987) (quoting Snell v. Brothers, 527 S.W.2d 114, 116 (Tenn. 1975)). The Tenure Act also affords "a measure of job security to those educators who have attained tenure status" and assures "efficient administration of the local educational systems of this State" by creating stability. Ryan v. Anderson, 481 S.W.2d 371, 374 (Tenn. 1972).

The statute defines "tenure" as:

> the statutory requirements, conditions, relations and provisions in this part, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the board.

Tenn. Code Ann. § 49-5-501(11)(A). The Act creates two types of tenure—limited and permanent. Id. § 49-5-503. It is undisputed that Ms. Thompson attained permanent tenure prior to the events giving rise to this appeal. See id. § 49-5-503(2).[4] Once attained, permanent tenure extends "until such time as the teacher . . . resigns, retires or *is dismissed under [the] provisions of this part.*" Id. § 49-5-501(11)(C) (emphasis added). The Tenure Act declares in no uncertain terms that "[n]o teacher shall be dismissed or suspended *except as provided in this part*." Id. § 49-5-511(a)(1) (emphasis added).

The five exclusive "causes for which a teacher may be dismissed" are "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in § 49-5-501." Id. § 49-5-511(a)(2).[5] However, even if one of these causes is charged, certain procedures must be provided *before* a tenured teacher is dismissed. First, written charges must be presented to the board of education specifically stating an offense that would amount to cause for the teacher's dismissal, and "the charges *shall* be made in writing, specifically stating the offenses which are charged, and *shall* be signed by the party or parties making the charges." Id. § 49-5-511(a)(4) (emphasis added). If the board of education determines that

---

[4] Tennessee Code Annotated section 49-5-503(2) provides:

> "Permanent tenure" applies to any teacher who:
>
>> (A) Has a degree from an approved four-year college or to any vocational teacher who has the equivalent amount of training established and licensed by the state board of education;
>> (B) Holds a valid professional license based on training covering the subjects or grades taught;
>> (C) Has completed a probationary period of three (3) school years or not less than twenty-seven (27) months within the last five-year period, the last year to be employed as a regular teacher; and
>> (D) Is reemployed by the board for service after the probationary period.

[5] The only other statutorily authorized ground for dismissal of a tenured teacher is "[w]hen it becomes necessary to reduce the number of teaching positions." Tenn. Code Ann. § 49-5-511(b)(1). This provision is inapplicable here.

the "charges are of such nature as to warrant the dismissal of the teacher, the director of schools *shall* give the teacher" written notice of the board's decision, a copy of the charges against the teacher, and "a copy of a form which shall be provided by the commissioner of education advising the teacher as to the teacher's legal duties, rights and recourse under the terms of this part." Id. § 49-5-511(a)(5) (emphasis added). The teacher then "may, within thirty (30) days after receipt of notice, *demand* a hearing before the board" by giving "written notice to the director of schools of the teacher's request for a hearing." Id. § 49-5-512(a)(1) (emphasis added); see also Sanders v. Vinson, 558 S.W.2d 838, 844 (Tenn. 1977) (recognizing that a teacher's receipt of written notice of the board's decision triggers the teacher's right to demand a pre-termination hearing before the board).

When a teacher demands a hearing before the board, "[t]he director of schools *shall*, within five (5) days after receipt of [the] request, indicate the place of such hearing and set a convenient date, which date *shall not* be later than thirty (30) days following receipt of [the] notice demanding a hearing." Tenn. Code Ann. § 49-5-512(a)(2) (emphasis added). "The teacher may appear at the hearing and plead the teacher's cause in person or by counsel." Id. § 49-5-512(a)(3). Additionally, the teacher "may present witnesses, and shall have full opportunity to present the teacher's contentions and to support them with evidence and argument." Id. at § 49-5-512(a)(4). The teacher must be provided a "full, complete, and impartial hearing before the board, including the right to have evidence deemed relevant by the teacher included in the record of the hearing, even if objected to by the person conducting the hearing." Id. The board chair conducting the hearing has the power to issue subpoenas, and both the teacher and the board may have subpoenas issued. Id. § 49-5-512(a)(5). All testimony must be given under oath, and either party may invoke the rule of sequestration for witnesses. Id. § 49-5-512(a)(6), (8). If an appeal is taken, a transcript or recording of the hearing must be prepared, and all actions of the board must be reduced to writing and included in the record. Id. § 49-5-512(a)(7). After the hearing, "[t]he board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision." Id. § 49-5-512(a)(9). A tenured teacher "who is dismissed or suspended by action of the board" may then obtain judicial review by filing a petition for writ of certiorari within thirty days of the board's decision. Id. § 49-5-513(a)-(b).

Ms. Thompson received absolutely none of the pre-termination protections the Tenure Act provides. She was not charged with any of the exclusive grounds for dismissal of a tenured teacher. In fact, she was not charged with anything at all, nor were written charges against her presented to the Board for action prior to the April 11, 2007 letter from Mr. Goodloe terminating her employment. We have long emphasized that the statute requiring specific written charges is mandatory. See Turk v. Franklin Special Sch. Dist., 640 S.W.2d 218, 220 (Tenn. 1982).

In Turk, the board of education dismissed the teacher based in part on facts and circumstances not specified in the written charges provided to the teacher prior to the Board hearing. In overturning the teacher's dismissal, this Court stated that "[t]he board acted in flagrant disregard of the statutory requirement and fundamental fairness in considering matters that should have been specifically charged in writing." Id. at 220. The Court in Turk relied on Potts v. Gibson, 469 S.W.2d 130 (Tenn. 1971), in which this Court explained that "the first essential" for the dismissal of a tenured teacher is a "notice sufficient in substance and form to fairly apprise the teacher of the charge against him and enable him to prepare his defense in advance of the hearing." Id. at 133.

This "first essential" was blatantly disregarded when Ms. Thompson's employment was terminated, and a cascade of noncompliance with the Tenure Act resulted. Because no written charges were presented, the Board failed to make the required preliminary determination of whether the charges, if true, would warrant Ms. Thompson's dismissal. In turn, because the Board made no preliminary determination, Ms. Thompson received no notice of the Board's decision and was denied her right to demand a pre-termination hearing before the Board. Prior to filing this lawsuit, the only communication Ms. Thompson received regarding the termination of her employment was the April 11, 2007 letter from Mr. Goodloe, a Labor Relations Administrator, purporting to act on behalf of the Superintendent. According to the letter, Mr. Goodloe alone determined both that discipline was appropriate and that Ms. Thompson's employment should be terminated retroactively to January 2, 2007. A single administrator's decision to dismiss a tenured teacher retroactively, without providing her written notice of charges or a hearing before the Board, is the type of arbitrary action the Tenure Act was meant to prevent.

The Board seeks to justify this noncompliance with the Tenure Act by arguing that Ms. Thompson constructively resigned and forfeited her tenure by failing either to return from sick leave on January 2, 2007, or to request an extension of leave in accordance with Board policy. The Board's arguments are altogether unpersuasive for two reasons.

First, the Board *admitted* in its answer that Ms. Thompson was a tenured teacher at the time of her dismissal and that she was entitled to a hearing.

Second, contrary to the holding of the Court of Appeals, the statutes on which the Board relies do not support its arguments that Ms. Thompson's failure to return from sick leave or request an extension of leave amounts to a constructive resignation and a forfeiture of tenure.[6] The term "constructive resignation" does not appear either in the Tenure Act or

_____

[6] The trial court denied the Board's motion to amend its answer to assert that Ms. Thompson
(continued...)

-10-

in judicial decisions interpreting it. The Board relies on Tennessee Code Annotated section 49-5-706 to support its argument. This statute provides:

> Any teacher on leave shall, at least thirty (30) days prior to the date of return, notify the director of schools in writing if the teacher does not intend to return to the position from which the teacher is on leave. Failure to render such notice may be considered breach of contract.

Tenn. Code Ann. § 49-5-706 (2002). This statute does not authorize the Board to treat a teacher's failure to return from sick leave or failure to give thirty days notice of her intent not to return as a constructive resignation or a forfeiture of tenure. Rather, it states that failure to provide thirty days' notice "may be considered breach of contract." Id.

Seizing on the words "breach of contract" in section 49-5-706, the Board argues, based on the *heading* and text of section 49-5-508(a), that Ms. Thompson's breach of contract—her failure either to return from sick leave or to give proper notice that she would not be returning—resulted in an immediate forfeiture of tenure. We disagree.

Tennessee Code Annotated section 49-5-508(a) provides:

> Breach of contract — Effect on tenure. — (a) A teacher shall give the director of schools notice of resignation at least thirty (30) days in advance of the effective date of the resignation. A teacher who fails to give such notice, in the absence of justifiable mitigating circumstances, shall forfeit all tenure status under this part; provided, that the board may waive the thirty (30) days' notice requirement and permit a teacher to resign in good standing.

Id. § 49-5-508(a) (2002). Admittedly, the phrase "breach of contract" appears in the statutory heading, but this language is of no significance because statutory section headings "shall not be construed as part of the law." Id. § 1-3-109 (2003). Thus, the success of the Board's argument depends on the text of section 49-5-508(a), and the text does not support the Board's assertion, but rather provides for a forfeiture of tenure status only if a teacher

[6](...continued)
constructively resigned and forfeited her tenure by failing either to return from sick leave or to request an extension of leave. Although the Board failed to challenge on appeal the trial court's ruling on its motion to amend, the Court of Appeals reversed the trial court's decision based on the arguments raised in the failed amendment. In this Court, Ms. Thompson has challenged the Court of Appeals' ruling, and we deem it appropriate to address these issues. Tenn. R. App. P. 13(b).

fails to give thirty days' notice of her *resignation*. It is undisputed that Ms. Thompson did not resign. Neither section 49-5-508(a) nor any other portion of the Tenure Act authorizes the Board to treat her failure to return from or request an extension of sick leave as a constructive resignation or an immediate forfeiture of tenure.

To be sure, a teacher's failure to return from leave may be considered cause for termination because it is "neglect of duty," see id. § 49-5-511(a)(2), which is defined as "gross or repeated failure to perform duties and responsibilities which reasonably can be expected of one in such capacity, *or continued unexcused or unnecessary absence from duty.*" Id. § 49-5-501(8) (emphasis added). Here, the Board certainly could have charged Ms. Thompson with neglect of duty and sought her dismissal so long as the Board proceeded consistently with the provisions of the Tenure Act. But no statute authorized the Board to deem Ms. Thompson's failure to return from sick leave a constructive resignation or a forfeiture of tenure that stripped her of the pre-termination protections afforded by the Tenure Act.[7]

In concluding that the trial court erred by granting Ms. Thompson summary judgment, the Court of Appeals accepted the Board's legal argument regarding forfeiture of tenure, and found that whether Ms. Thompson "actually requested more sick leave prior to her termination or whether, in not doing so, she forfeited her tenure" was a disputed issue of material fact. Thompson, 2012 WL 134245, at *11. Having rejected the Board's legal argument, we also disagree with the Court of Appeals' conclusion that a disputed issue of material fact exists. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). Whether Ms. Thompson requested additional sick leave is not a material factual dispute because, regardless of its resolution, no statute authorized the Board to treat her failure to return from or request additional sick leave as a constructive resignation or a forfeiture of tenure. The undisputed material facts clearly establish that Ms. Thompson was a tenured teacher and that the Board violated her rights under the Tenure Act.

## Constitutional Due Process

These same undisputed material facts also establish that the Board deprived Ms. Thompson of her constitutional right to procedural due process. A tenured teacher, like other

---

[7] The Board's argument regarding forfeiture of tenure is also undercut by another provision of the Tenure Act that permits the immediate suspension and dismissal of teachers convicted of certain drug and felony offenses but preserves to those teachers the rights of appeal and review provided in the Tenure Act. Tenn. Code Ann. § 49-5-511(c)(1). This statute suggests that, had the Legislature intended to authorize the immediate dismissal of teachers who fail to return from sick leave, it would have said so.

-12-

public employees, possesses a constitutionally protected property interest in continued employment, and she cannot be deprived of this right without due process. See Bd. of Regents v. Roth, 408 U.S. 564, 576-77 (1972); Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581 (6th Cir. 1990). Two of the essential requirements of due process are pre-deprivation notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). At a minimum, the Due Process Clause of the Fourteenth Amendment of the United States Constitution entitles a tenured teacher to pre-termination notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story to the employer. Id. at 546; Gunasekera v. Irwin, 551 F.3d 461, 469 (6th Cir. 2009); Farhat v. Jopke, 370 F.3d 580, 595 (6th Cir. 2004). These *minimal* requirements are constitutionally essential.[8]

The undisputed material facts establish that the Board failed to provide Ms. Thompson with any pre-termination notice of charges, explanation of evidence, or opportunity to be heard. The Board's failure to afford these minimal constitutional safeguards violated Ms. Thompson's constitutional right to procedural due process.

Remedy - Tenure Act Violation

The parties disagree as to the appropriate remedy for a violation by the Board of Ms. Thompson's rights under the Tenure Act. Ms. Thompson argues that the trial court correctly ordered her reinstatement, awarded full salary as back pay, and properly declined to deduct from the award money she earned or could have earned after her improper dismissal.

The Board argues that Ms. Thompson's only remedy is, and always has been, a hearing before the Board to determine whether she should be dismissed for cause. The Board insists that it attempted to provide this remedy on August 18, 2009, when it notified Ms. Thompson of the written charges against her and scheduled a hearing on those charges.[9]

To determine the proper remedy, we turn again to a portion of the Tenure Act, which states:

---

[8] The Tenure Act actually provides teachers in Tennessee with protections greater than these minimal constitutional requirements.

[9] The Board also reasons that Ms. Thompson's remedy is limited to a hearing because the Tenure Act provides for judicial review of the Board's decision pursuant to the common law writ of certiorari. This argument is without merit. At the risk of stating the obvious, we are not here reviewing a decision of the Board; rather, we are considering Ms. Thompson's claim that her termination violated the Tenure Act precisely because she was never afforded a pre-termination hearing before the Board.

-13-

> A director of schools may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal. *If vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.*

Tenn. Code Ann. § 49-5-511(a)(3) (emphasis added). This statute establishes the remedy for teachers who are suspended but later vindicated or reinstated. Of course, Ms. Thompson was not suspended; rather, her employment was terminated without charges or a hearing in violation of the Tenure Act. No statute addresses the appropriate remedy for a tenured teacher in Ms. Thompson's circumstances because the statute does not contemplate that a tenured teacher will be dismissed without charges or a hearing. Rather, the statute contemplates only that a teacher may be suspended "pending investigation or final dispositon of the case before the board or on appeal." Id. Where, as here, a tenured teacher's employment is summarily terminated in violation of the Tenure Act, section 49-5-511(a)(3) provides the appropriate remedy.

Relying on Van Hooser v. Warren County Board of Education, 807 S.W.2d 230 (Tenn. 1991), the Board next argues that Ms. Thompson is not entitled to reinstatement under section 49-5-511(a)(3) because she has not been exonerated. Van Hooser does not support the Board's argument.

The tenured teacher in Van Hooser was suspended in the spring of 1983 for paddling eight students for failing to do their assignments. Van Hooser, 807 S.W.2d at 232. The teacher obtained counsel and negotiated a settlement before charges against her were presented to the board pursuant to the Tenure Act. Id. at 232-33. Under the terms of the settlement, the teacher was to be reinstated under probation in the fall term of the 1983-1984 school year, possibly transferred, and required to satisfy certain obligations for continued employment. Id. at 233.

Although the suspension had not been officially lifted and the teacher had not satisfied the obligations imposed on her by the settlement, the teacher returned to work for the 1983-1984 school year, but she worked as a librarian not a classroom teacher. Id. at 234. After the teacher failed to satisfy her obligations under the settlement, the board advised her that she had not been rehired for the 1984-1985 school year. Id. At that time the board did not terminate her employment according to the procedures mandated by the Tenure Act. Id. The board later cured this error, provided the teacher with "the appropriate procedures as set forth in the Teacher Tenure Act," and terminated her employment. Id. at 239. The teacher appealed, seeking reinstatement as a classroom teacher and damages for lost income for the suspension during the 1982-1983 school year and for the 1984-1985 school year when the

board notified her that she had not been rehired but failed to follow the procedures mandated by the Tenure Act. Id. at 236.

Before this Court, the board conceded liability for the wages the teacher lost during the 1984-1985 school year "because of the school board's failure to comply fully with the provisions of the tenure statute." Id. However, the board argued that it did not owe the teacher back pay for the suspension at the end of the 1982-1983 school year. Id. at 238. This Court agreed, finding that the teacher had not been "'vindicated of the charges underlying her suspension.'" Id. The Van Hooser Court also explained that the teacher's employment as a librarian after her suspension did not amount to reinstatement, for purposes of section 49-5-511(a)(3), because that action had been "taken because negotiations were continuing with her attorney to settle the matter." Id. This Court declared that "reinstatement," as used in § 49-5-511(a)(3), "is clearly a term of art," which "implies that the teacher has either been exonerated, or if not exonerated, at least excused of the conduct that led to the suspension, *i.e.* that there was no basis for the suspension after all, or that there were extenuating circumstances in mitigation." 807 S.W.2d at 241. This Court explained that a teacher who is reinstated after a suspension "is entitled to the pay that would have been forthcoming had the suspension never occurred." Id.

As the foregoing summary clarifies, our discussion of reinstatement and exoneration in Van Hooser presupposed board action in compliance with the Tenure Act. Indeed, in Van Hooser, the board conceded its liability to the teacher for wages she lost during the 1984-1985 school year "because of the school board's failure to comply fully with the provisions of the tenure statute." Id. at 236.

Unlike the teacher in Van Hooser, Ms. Thompson received none of the procedures provided by the Tenure Act. Her employment was terminated without charges ever having been presented against her or action by the Board. Exoneration, as the term was used in Van Hooser, is not practicable in these circumstances. We conclude that exoneration is not a prerequisite to reinstatement for a tenured teacher whose employment has been summarily terminated without notice of the charges against her or action by the board. The trial court did not err by ordering Ms. Thompson's reinstatement.

Having concluded that Ms. Thompson is entitled to reinstatement, we must next consider the appropriate measure of damages to which she is entitled. This Court has previously interpreted the language of § 49-5-511(a)(3) as entitling vindicated or reinstated teachers to an award of "full salary" without offset for money the teacher earned or could have earned in other employment. Bates v. Deal, 728 S.W.2d 326, 326 (Tenn. 1987); Jones v. Brown, 727 S.W.2d 497, 499 (Tenn. 1987) ("This statute is very specific. Plaintiff is entitled to full back pay at the rate of a teacher's salary."). The Legislature has not revised

the statute to express disapproval of this interpretation. "[T]he [L]egislature's failure to 'express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.'" Freeman Indus. v. Eastman Chem. Co., 172 S.W.3d 512, 519 (Tenn. 2005) (quoting Hamby v. McDaniel, 559 S.W.2d 774, 776 (Tenn. 1977)).

Furthermore, the Board has not advanced a persuasive argument for overruling or modifying these prior decisions construing section 49-5-511(a)(3). Our role in construing statutes is to determine and effectuate legislative intent and purpose. See Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010); In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009). To fulfill this role, we focus on the text of the statute and give the words their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. See Lee Med., Inc., 312 S.W.3d at 526; Hayes v. Gibson Cnty., 288 S.W.3d 334, 337 (Tenn. 2009); Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). When the language of a statute is clear and unambiguous, courts look no farther to ascertain its meaning. See Lee Med., Inc., 312 S.W.3d at 527; Green v. Green, 293 S.W.3d 493, 507 (Tenn. 2009). The clear and unambiguous statutory language entitles Ms. Thompson to "full salary." Tenn. Code Ann. § 49-5-511(a)(3). We decline to read an offset requirement into this clear statutory language.

The Board asserts that awarding Ms. Thompson full salary without offset will provide her a windfall.[10] We disagree. The Board is correct that Ms. Thompson's award of "full salary" will be considerable; however, this may be attributed primarily to the Board's refusal to comply with statutory mandates. The Tenure Act is carefully crafted both to afford teachers an expeditious process and to limit the liability incurred by boards of education when teachers are vindicated or reinstated.[11] The Tenure Act has not operated as designed

_____

[10] We note that Ms. Thompson's attorney conceded at oral argument that Ms. Thompson was unable to work from January to June 2007. The Board asserted that Ms. Thompson remained unable to work through 2008. Contrary to the Board's assertion, the proof in the record shows that Ms. Thompson began teaching at Southwest Community College in the fall of 2007.

[11] For instance, a teacher has thirty days after receiving notice of charges to request a hearing. Tenn. Code Ann. § 49-5-512(a). The hearing must be scheduled no later than thirty days after receipt of a teacher's request. Id. A board has only ten days after the hearing to decide the case. Id. § 49-5-512(a)(9). A teacher has just thirty days after the board's decision to seek judicial review. Id. § 49-5-513(b). A board has thirty days thereafter to file an answer to the petition. Id. § 49-5-513(f). The trial court must schedule a hearing on the petition "at the earliest practical date." Id. § 49-5-513(g). A teacher's filing of the petition for judicial review "shall suspend the order of the board pending a decision by the chancellor, but the teacher shall not be permitted to return to teaching pending final disposition of the appeal." Id. § 49-5-513(e). Additionally, a director of schools is authorized to suspend a teacher "at any time that may seem necessary, pending
(continued...)

-16-

in this case because its requirements were ignored, even after Ms. Thompson filed suit and the trial court ruled that a hearing could not occur until Ms. Thompson had been reinstated.

The lack of compliance with this sixty-year-old statute is puzzling. Indeed, had Ms. Thompson been reinstated in response either to the letters of April 23 and June 4, 2007 from the TEA staff attorney, or to the April 21, 2010 order of the trial court, the Board's liability would have been limited. The Board chose not to reinstate Ms. Thompson at any of these earlier times and is now liable for the "full salary" remedy provided by the Tenure Act. We conclude that the trial court correctly held, based on clear statutory language and long-standing precedent, that Ms. Thompson is entitled to reinstatement and an award of full salary without offset for monies she earned or could have earned in other employment. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court to determine the additional "full salary" that has accrued during the pendency of this appeal.

Remedy - Constitutional Violation

The parties also disagree as to the appropriate remedy for the Board's violation of Ms. Thompson's constitutional rights. Pursuant to § 1983, the trial court awarded Ms. Thompson compensatory damages of $3500 for "career ladder supplemental pay," credit for thirty-five accumulated sick leave days, all retirement and salary benefits that would have accrued had Ms. Thompson's employment not been terminated, $5000 in compensatory damages for mental anguish, $80,426.25 for attorney's fees, and $8691.14 for litigation expenses. Although the Board agrees that a litigant may recover damages for actual harm caused by a violation of her constitutional right to procedural due process, the Board maintains that Ms. Thompson failed to prove actual harm.

"Section 1983 does not create or confer substantive rights." King v. Betts, 354 S.W.3d 691, 702 (Tenn. 2011) (citing Chapman v. Hous. Welfare Rights Org., 441 U.S. 600, 617 (1979)). Rather, it provides a remedy when rights protected by the United States Constitution or other federal statutes are violated. Id. (citing Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989); Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). The Board is correct that litigants who wish to recover damages pursuant to § 1983 "must allege and prove more than a violation of federal law." King, 354 S.W.3d at 703. To recover damages, litigants must "prove that they personally suffered an actual injury to a federally protected right." Id. (footnotes omitted); see also Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("[N]o compensatory damages may be awarded in a § 1983 suit

---

[11](...continued)
investigation or final disposition of a case before the board or an appeal." Id. § 49-5-511(a)(3).

absent proof of actual injury."); Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986) ("Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations."); Carey v. Piphus, 435 U.S. 247, 254 (1978) ("[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights . . . ."). In addition to out-of-pocket losses, compensatory damages may also be recovered for injuries such as impairment of reputation, personal humiliation, and mental anguish and suffering. Stachura, 477 U.S. at 307; see also Carey, 435 U.S. at 264.

At the hearing on damages, Ms. Thompson described the mental anguish and suffering she endured as a result of her improper dismissal without a hearing. The Board vigorously cross-examined Ms. Thompson. After considering Ms. Thompson's testimony, as well as the arguments for and against an award, the trial court awarded Ms. Thompson $5000 as compensation for the mental anguish she suffered. The proof does not preponderate against either the trial court's finding that Ms. Thompson suffered an actual injury of mental anguish or the trial court's award of $5000.

As for the remainder of the award, the Board stipulated in the trial court that Ms. Thompson would be entitled to recover career ladder supplemental pay, accumulated sick leave, and all retirement and salary benefits if the trial court concluded that the Board violated her statutory and constitutional rights. Acting on this stipulation, the trial court awarded Ms. Thompson $3500 for "career ladder supplemental pay," credit for thirty-five accumulated sick leave days, all retirement and salary benefits that would have accrued had Ms. Thompson not been terminated, $80,426.25 for attorney's fees, and $8691.14 for litigation expenses. Ms. Thompson's attorney expressed concern, however, that these stipulated damages would be set aside on appeal if premised on the violation of Ms. Thompson's rights under the Tenure Act. He explained that the Court of Appeals had held that a vindicated teacher "is not entitled to recover for career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution." See Mumford v. Bd. of Educ. of Memphis, 173 S.W.3d 452, 457 (Tenn. Ct. App. 2004). Responding to this concern, the trial court expressly premised this portion of the award on § 1983.

Given the Board's stipulation, the proof does not preponderate against the trial court's finding that Ms. Thompson's actual injuries included her career ladder supplemental pay, accrued sick leave, retirement, and other salary benefits.[12] Therefore, on remand the trial court shall determine and add to Ms. Thompson's award the career ladder supplemental pay,

---

[12] Because the parties stipulated Ms. Thompson's entitlement to these damages and because the trial court awarded these damages pursuant to § 1983, our holding herein does not implicate the decision in Mumford.

sick leave, retirement, and salary benefits that have accrued during the pendency of this appeal.

Additionally, as a prevailing plaintiff in a § 1983 action, Ms. Thompson is entitled to recover reasonable attorney's fees pursuant to § 1988. Maine v. Thiboutot, 448 U.S. 1, 9-11 (1980); Wimley v. Rudolph, 931 S.W.2d 513, 517 (Tenn. 1996). On remand, the trial court shall calculate and award Ms. Thompson the reasonable attorney's fees incurred as a result of this appeal.

Finally, we direct the trial court to conduct the proceedings on remand as expeditiously as possible so as to conclude this five-year litigation and allow the correct process to proceed. This decision does not preclude the Board from seeking to terminate Ms. Thompson's employment so long as the Board first reinstates her and pays the back pay and other damages to which she is entitled. Indeed, counsel for Ms. Thompson acknowledged as much at oral argument. However, should the Board choose to seek termination of Ms. Thompson's employment, it must comply with the procedures prescribed by the Tenure Act.

## Conclusion

For the reasons explained herein, we conclude that the trial court properly granted Ms. Thompson summary judgment and properly awarded her damages pursuant to the Tenure Act and § 1983, as well as attorney's fees pursuant to § 1988. Accordingly, the judgment of the Court of Appeals is reversed in part, and the judgment of the trial court is reinstated. However, this case is remanded to the trial court to calculate and to add to Ms. Thompson's award the additional salary and benefits that have accrued during the pendency of this appeal. The trial court shall also calculate and award Ms. Thompson the reasonable attorney's fees incurred as a result of this appeal. Costs of this appeal are taxed to the Board.

_____
CORNELIA A. CLARK, JUSTICE