IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2024 Session

# ROBERT H. BECKHAM ET AL. v. CITY OF WAYNESBORO, TENNESSEE

**Appeal from the Circuit Court for Wayne County**
No. 4820     Christopher V. Sockwell, Judge
_____

**No. M2023-00654-COA-R3-CV**
_____

In this personal injury action, the plaintiff slipped and fell while jumping off of a diving board during a visit to a city owned pool, injuring his knee. Thereafter, the plaintiff sued the city based on negligence to recover for his injuries sustained from the accident and his wife sought damages for a derivative claim for loss of consortium. The city filed an answer, raising the Tennessee Recreational Use Statute (hereinafter "the TRUS") as an affirmative defense. The city then filed a motion for summary judgment, arguing that it was immune from liability under the TRUS because the city is a "landowner" as defined by the TRUS, the plaintiff was engaged in a "recreational activity" listed in the TRUS at the time of the accident, and none of the exceptions or limitations to the TRUS were applicable. The trial court agreed and granted summary judgment in favor of the city. The trial court found that the language of the TRUS is not ambiguous and found that the city was immune from liability under the TRUS because the city pool, which is government-owned property, was being used for recreation at the time of the plaintiff's injury and involved an activity included in the TRUS, "water sports." The plaintiffs appeal the trial court's holding that swimming in a city pool is a recreational activity protected under the TRUS. For the reasons stated below, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellants, Robert and Ashley Beckham.

John D. Burleson, Matthew R. Courtner, Jackson, Tennessee, for the appellee, City of Waynesboro, Tennessee.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The City of Waynesboro, Tennessee ("the City"), owns and operates a public pool, which has a diving board. On July 28, 2020, Robert Beckham ("Plaintiff"), visited the city pool to swim with his family. During the visit, Plaintiff went to use the diving board. As he began to jump off of the diving board, Plaintiff slipped, fell, and hit his knee on the board. Two days later, he underwent surgery on his knee for a ruptured quadriceps tendon and torn lateral meniscus.

On July 15, 2021, Plaintiff and his wife, Ashley Beckham ("Mrs. Beckham"), (collectively "Plaintiffs") filed a complaint against the City in the Circuit Court for Wayne County, alleging negligence under the Governmental Tort Liability Act. The complaint asserted that the City had a duty to properly maintain the diving board, had actual or constructive notice that the diving board was in a dangerous condition, and failed to fix the diving board or warn Plaintiff of its dangerous condition. The complaint further asserted that the City's sovereign immunity was removed under the Governmental Tort Liability Act, specifically, Tennessee Code Annotated §§ 29-20-204 and 205. Plaintiff sought damages not to exceed $1,375,000 or the limits of all available insurance pursuant to the Governmental Tort Liability Act. Mrs. Beckham also sought damages for loss of services, society, and consortium not to exceed $90,000 or the limits of all available insurance pursuant to the Governmental Tort Liability Act.

In October 2021, the City filed an answer, denying liability and raising an affirmative defense under the TRUS.

In September 2022, following a period of discovery, the City filed a motion for summary judgment. The City argued that it was immune as a matter of law under the TRUS because the TRUS "provides a landowner an affirmative defense from tort liability when an injury occurs on the landowner's property while the injured party was engaged in a recreational activity" and Plaintiff "was engaged in a recreational activity" in a pool owned by the City at the time of his injury. The City also noted that it, as a governmental entity, is considered a "landowner" under the language of the TRUS, and that none of the exceptions to immunity under the TRUS applied. The City further argued that, because Plaintiff's negligence claim fails, Mrs. Beckham's derivative loss of consortium claim also fails.

Plaintiffs filed a response to the City's motion for summary judgment. Plaintiffs argued that the affirmative defense contained within the TRUS does not apply to a city pool because the "recreational activities" delineated in the TRUS, "involve outdoor recreation activities that require significant amounts of land or water to engage in, such as hunting, fishing, trapping, animal riding, whitewater rafting, canoeing, and hiking[.]" Plaintiffs also argued that the TRUS is ambiguous as to whether a city pool is "land" or

"premises" covered under the statute. Noting that courts from other states have found public swimming pools to be exempt from the protections of their states' recreational use statutes, Plaintiffs argued that the trial court should similarly find that public swimming pools are exempt from the protections of the TRUS.

The trial court heard oral arguments on the City's motion at a hearing held on October 20, 2022. After this initial hearing, the court allowed the parties to submit further briefing on the legislative history of the TRUS. The trial court heard final arguments on the City's motion for summary judgment on March 11, 2023.

In its written order, filed on April 10, 2023, the trial court framed the issue before it as "simply whether the TRUS includes swimming at a city's public pool as a recreational activity." The court found that the language of the TRUS was "not ambiguous, and thus, is to be interpreted by the plain language in its normal and accepted use." The court then looked to the Supreme Court's decision in *Parent ex rel. Parent v. State*, 991 S.W.2d 240 (Tenn. 1999), noting that

> [T]he issue in *Parent* revolved around bicycling as a recreational activity. The Court held that T.C.A. § 70-7-102 provides the State, not a private landowner, with an immunity defense when injury occurs during bicycling on a paved trail on State-owned land; thus, the State may now raise the TRUS as a defense to a plaintiff's claim.

The court found that, "the situation in the current case is similar" to the situation in *Parent*, as the city-owned pool in this case "is a government-owned property (City of Waynesboro) that was used for recreational use and involved an activity that was included in the TRUS, namely 'water sports'." The court concluded that the plain meaning of the term "water sports" "clearly includes swimming and diving."

The court then shifted its attention to "whether there [is] a difference in improved areas versus unimproved areas when a plaintiff is injured." Again considering the Court's analysis in *Parent v. State*, along with this court's decision in *Mathews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318 (Tenn. Ct. App. Dec. 19, 2005), the court noted that "In Parent, plaintiff was injured in a "paved" pathway, while in Matthews, the plaintiff was injured on an improved concrete walkway." Thus, the court saw "no need to differentiate between an improved swimming area, namely, a completed outdoor swimming pool with a diving board versus a natural lake." The court found that the affirmative defense raised by the City under the TRUS was proper, and granted the City's motion for summary judgment.

This appeal followed.

ISSUES

Plaintiffs presents one issue on appeal. The City presents no additional issues. Plaintiffs' issue is stated as follows:

> Whether the trial court erred in granting summary judgment to the Defendant, as a matter of law based on Tennessee's Recreational Use Statute, by holding that swimming [in] a city pool is a "water sport" on the "land" or "premises" of the City.[1]

## STANDARD OF REVIEW

The relevant standard of review for summary judgment when the interpretation of a statute is at issue is set forth in *Harris v. Haynes*, 445 S.W.3d 143 (Tenn. 2014) as follows:

> Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Thompson v. Memphis City Schs. Bd. of Educ.,* 395 S.W.3d 616, 622 (Tenn. 2012). The moving party bears the burden of establishing that summary judgment is appropriate as a matter of law, while the court must view the evidence in the light most favorable to the nonmoving party and resolve any genuine issues of material fact in its favor. *Id.* We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Id.* Issues of statutory construction are also reviewed de novo. *Johnson v. Hopkins,* 432 S.W.3d 840, 844 (Tenn. 2013); *Thompson,* 395 S.W.3d at 622.

> When determining the meaning of statutes, we follow the standard rules of statutory construction. Our primary goal "is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." *Johnson,* 432 S.W.3d at 848 (quoting *Lind v. Beaman Dodge, Inc.,* 356 S.W.3d 889, 895 (Tenn. 2011)). We presume that every word in a statute has meaning and purpose and that each word's meaning should be given full effect as long as doing so does not frustrate the General Assembly's obvious intention. *Id.* Words "'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Id.* (quoting *Mills v. Fulmarque, Inc.,* 360 S.W.3d 362, 368 (Tenn.2012)). When a statute's meaning is clear, we "'apply the plain meaning without complicating the task' and enforce the statute as written." *Id.* (quoting *Lind,* 356 S.W.3d at 895).

---

[1] This is an issue of first impression for this court.

*Id*. at 146.

## ANALYSIS

The issue on appeal requires us to interpret the TRUS. The TRUS provides an affirmative defense to a landowner when a person is injured while engaging in a recreational activity on the landowner's property. *Morgan v. State*, No. M2002-02496-COA-R3CV, 2004 WL 170352, at *4 (Tenn. Ct. App. Jan. 27, 2004).

A "landowner" under the TRUS includes "any governmental entity" and is defined as "the legal title holder or owner of such land or premises, or the person entitled to immediate possession of the land or premises, and includes any lessee, occupant or any other person in control of the land or premises." *Pierce v. State*, No. M2020-00533-COA-R3CV, 2021 WL 2627509, at *5 (Tenn. Ct. App. June 25, 2021) (citing Tenn. Code Ann. § 70-7-101(2)(A)–(B)). Unless otherwise required by the context, the TRUS instructs that

> (1)(A) "Land" or "premises" means and includes all real property, waters, private ways, trees and any building or structure that might be located on real property, waters and private ways;
>
> (B) "**Land" or "premises" includes** real property, waters, private ways, trees and **any** building or **structure located on the land or premises, owned by any governmental entity**, including, but not limited to, the Tennessee valley authority; and
>
> (C) "Land" or "premises" does not include the landowner's principal place of residence and any improvements erected for recreational purposes that immediately surround such residence, including, but not limited to, swimming pools, tennis or badminton courts, barbecue or horse shoe pits, jacuzzis, hot tubs or saunas;

Tenn. Code Ann. § 70-7-101(1)(A)–(C) (emphasis added).

Under § 102, **a statutory landowner will owe "no duty of care to keep such land or premises safe for entry or use by others**", "nor shall such landowner be required to give any warning of hazardous conditions. . . on such land or premises" for the following recreational activities:

> [H]unting, fishing, trapping, camping, **water sports**, white water rafting, canoeing, hiking, sightseeing, animal riding, bird watching, dog training, boating, caving, fruit and vegetable picking for the participant's own use, nature and historical studies and research, rock climbing, skeet and trap shooting, sporting clays, shooting sports, and target shooting, including

- 5 -

archery and shooting range activities, skiing, off-road vehicle riding, and cutting or removing wood for the participant's own use

Tenn. Code Ann. § 70-7-102(a) (emphasis added).

However, under § 104 of the TRUS, a statutory landowner will remain liable for the following:

> (1) Gross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure or activity; or
>
> (2) Injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, cave, recreational noncommercial aircraft operations or recreational noncommercial ultra light vehicle operations on private airstrips, or any other legal purpose was granted, to third persons or to persons to whom the person granting permission, or the landowner, lessee, occupant, or any person in control of the land or premises, owed a duty to keep the land or premises safe or to warn of danger.

Tenn. Code Ann. § 70-7-104(a)(1)–(2). The above exceptions to the TRUS may not be construed to "impose liability or remove the immunity conferred by § 70-7-102 for failure to guard or warn of a dangerous condition created by forces of nature." *Id.* § 70-7-104(b).

In determining whether a party properly asserted an affirmative defense under § 102 of the TRUS based on the facts of that case, our Supreme Court employed a two-pronged analysis: "(1) whether the activity alleged is a recreational activity as defined by the statute; and if so, (2) whether any of the statutory exceptions or limitations to the immunity defense are applicable." *Parent*, 991 S.W.2d at 243. Four years after the release of the decision in *Parent*, this court concluded that applying Tennessee Code Annotated §§ 70-7-101 and -105 required a three-step analysis:

> First, the court must determine whether the party asserting the Tenn. Code Ann. § 70-7-102 defense is a landowner. Second, the court must determine whether the activity in which the injured party was engaged at the time of the injury is a recreational activity. Third, the court must determine whether any of the exceptions in Tenn. Code Ann. § 70-7-104 are applicable to the case.

*Morgan v. State*, No. M2002-02496-COA-R3CV, 2004 WL 170352 at *5 (Tenn. Ct. App. Jan. 27, 2004) (citing *Parent*, 991 S.W.2d at 242–43)).

Then, in 2021, this court explained in *Pierce v. State*, No. M2020-00533-COA-R3-CV, 2021 WL 2627509 (Tenn. Ct. App. June 25, 2021) that the first of the three prongs identified in *Morgan* was fairly implied in *Parent* for the following reasons:

No doubt, the first step identified . . . in *Morgan* is fairly implied as a necessary consideration from *Parent*, even though not formally a part of *Parent's* outlined "two-pronged analysis." *Parent*, 991 S.W.2d at 243. In other words, *Parent's* two-pronged inquiry appears to presuppose that a statutory "landowner" has asserted a recreational use defense, and the two-pronged analysis is what is used to determine whether that landowner is immune.

*Id.* at *6.

I.

In accordance with the three-prong test delineated in *Morgan v. State*, we first consider whether the City is a "landowner" under the TRUS, which necessarily requires that a city owned pool be considered the type of "land" or "premises" covered by the TRUS.

Plaintiffs claim that the TRUS is ambiguous as to whether a city pool is "land" or "premises" under §101 of the TRUS. While governmental entities are expressly included as "landowners" under § 101(2)(B), Plaintiffs note that § 101(1)(C) excludes residential swimming pools and other recreational improvements that surround a "landowner's principal place of residence" from the statutory definition of "land" or "premises". Given that governmental entities "traditionally do not have a 'principal place of residence'", but are considered "landowners" under the TRUS, Plaintiffs argue that the statute is "ambiguous as to what constitutes the 'land' or 'premises' of a governmental entity." Thus, Plaintiffs ask that this court look to the legislative history of the TRUS and find that "a reasonable interpretation of the [TRUS] in light of its legislative history. . . shows that city pools were not intended to be 'land' or 'premises' protected by the TRUS."

The City argues that the exclusion in 101(1)(C) is limited to swimming pools that "immediately surround[] a private residence where one actually lives." Because governmental entities do not have a "private residence", the City argues that city pools are not included in this exclusion, and that the plain language of the TRUS is unambiguous. The City further argues that it is a "landowner" under the TRUS because § 101(2)(B) expressly includes "any governmental entity" in the definition of "landowner".

The cardinal rule of statutory construction is to "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020) (citations omitted). When a statute's language is clear and unambiguous, a court "'must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language[,] and . . . enforce the language without reference to the broader

statutory intent, legislative history, or other sources." *Nelson v. Myres*, 545 S.W.3d 428, 431 (Tenn. 2018) (quoting *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)).

Conversely, when a statute is ambiguous, a court "'may reference the broader statutory scheme, the history of the legislation, or other sources' to determine the statute's meaning." *Parveen v. ACG S. Ins. Agency, LLC*, 613 S.W.3d 113, 119 (Tenn. 2020) (citation omitted). Generally, a statute is ambiguous when the parties derive different, reasonable interpretations from the statutory language. *Welch*, 595 S.W.3d at 622.

As mentioned above, the TRUS expressly provides that "'Land' or 'premises' includes any. . . **structure** located on the land or premises, **owned by any governmental entity**." Tenn. Code Ann. § 101(1)(B) (emphasis added). Both the pool and the diving board at issue are "structures", and it is undisputed that these "structures" are located on land owned by the City, a "governmental entity". Accordingly, we find that a city pool is "land" or "premises" under § 101(1)(B) of the TRUS.

With regard to § 101(1)(C), only swimming pools "erected for recreational purposes that immediately surround [a] **residence**" are excluded from the definition of "land" or "premises". This court has interpreted the word "residence", in the context of the TRUS, to mean "the place where one actually lives; a house or other abode; a dwelling." *McCaig v. Whitmore*, No. W2015-00646-COA-R3CV, 2016 WL 693154, at *5 (Tenn. Ct. App. Feb. 22, 2016) (citing *Black's Law Dictionary* 1423 (9th ed. 2009)). The plain language of § 101(1)(C) is clear that this exclusion applies only to swimming pools that surround a "dwelling", which a governmental entity does not have. Thus, we must apply § 101(1)(C) as written, and find that city pools are not excluded from the statutory definition of "land" or "premises". *See Patterson v. Shelter Mut. Ins. Co.*, No. M2014-01675-COA-R9CV, 2015 WL 5320231, at *6 (Tenn. Ct. App. Sept. 11, 2015) ("This court must abide by the words that the legislature chose to use, and we cannot add words that the General Assembly chose not to include.").

Applying the plain meaning of § 101(1), we find that a city pool is "land" or "premises" covered by the TRUS. In so finding, we also conclude that the City, as a "governmental entity" that owns "such land or premises", is a "landowner" under § 101(2) of the TRUS.

## II.

We next consider whether Plaintiff was engaged in a "recreational activity" under the TRUS at the time of his injury.

Plaintiff contends that he was not engaged in a "recreational activity" under § 102 because while "[o]ne may argue that [swimming] falls under the definition of 'water sports'", "the types of activities delineated in Section 102 suggest that it would apply to

swimming in lakes, ponds, rivers, streams—not a city pool." The City contends that Plaintiff was engaged in a "recreational activity" because "the plain and ordinary meaning of 'water sports' includes swimming" and "the list of recreational activities in Tenn. Code Ann. § 70-7-102(a) is non-exhaustive."

As noted by the trial court, our Supreme Court held in *Parent v. State* that the list of "recreational activities" in § 102 is "neither exclusive nor exhaustive" and "activities similar to those explicitly enumerated in § 102 may also fall within the purview of the recreational use statute." *Parent*, 991 S.W.2d at 243. Here, swimming and diving are activities that are recreational in nature and comparable to several of the activities listed in § 102, and which both fall under the general category of "water sports".

We therefore conclude that both swimming and diving are "recreational activities" under § 102, and that Plaintiff was engaged in a "recreational activity" under the TRUS at the time of his injury.[2]

### III.

Our final inquiry is whether any of the exceptions or limitations to the TRUS articulated in § 104 apply in the instant case. Plaintiff has not argued, at the trial level or on appeal, that any of the § 104 exceptions are applicable here. *See PNC Multifamily Capital Institutional Fund XXVI L.P. v. Mabry*, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012) (citations omitted) ("It is well settled that issued not raised at the trial level are considered waived on appeal."); *see also Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citations omitted) ("This court has repeatedly held that a party's failure to cite authority for its argument or to argue the issues in the body of its brief constitute a waive on appeal."). Therefore, the Plaintiff has waived any argument regarding the applicability of the exceptions enumerated in § 104 to this case.

Based on the foregoing analysis, we find that the City properly asserted an affirmative defense to Plaintiff's personal injury action under the TRUS, and that the trial court did not err in granting the City's motion for summary judgment as a matter of law.

---

[2] We respectfully disagree with Plaintiff's contention that the term "water sports", as used in the TRUS, applies only to swimming in lakes, ponds, rivers, or streams. § 102 contains no language limiting "water sports" to activities in or on lakes, ponds, rivers, or streams. Furthermore, we have held that a city pool is "land" or "premises" under the plain language of § 101. Thus, swimming or diving, each of which is a "recreational activity", in a city pool, which is "land" or "premises", owned by a governmental entity, a "landowner", falls squarely within the purview of the TRUS.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs on appeal are assessed to the appellants, Robert and Ashley Beckham.

_____
FRANK G. CLEMENT JR., P.J., M.S.