IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2005 Session

## LEE KETCHERSID v. RHEA COUNTY BOARD OF EDUCATION

**Appeal from the Chancery Court for Rhea County**
**No. 9699     Jeffrey F. Stewart, Chancellor**

---

**No. E2004-01153-COA-R3-CV - FILED APRIL 28, 2005**

---

Lee Ketchersid, a tenured teacher in the Rhea County School System, appealed her dismissal to the Rhea County Board of Education ("the School Board"). Following a hearing, the School Board determined that the evidence supported the charges against Mrs. Ketchersid of insubordination, incompetence, and inefficiency under the Teachers' Tenure Act, Tenn. Code Ann. § 49-5-501, *et seq.*, and voted to terminate Mrs. Ketchersid as a tenured teacher. Mrs. Ketchersid appealed the School Board's decision to the trial court, which, following a *de novo* review, held that her dismissal was supported by sufficient evidence. Mrs. Ketchersid appeals, arguing that the trial court erred in this determination. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

J. Arnold Fitzgerald, Dayton, Tennessee, for the appellant, Lee Ketchersid.

Robert G. Wheeler, Jr. and Deborah A.G. Smith, Nashville, Tennessee, for the appellee, Rhea County Board of Education.

**OPINION**

I.

During the 2000-2001 school year, Mrs. Ketchersid, who was certified to teach children in grades K-12, was a kindergarten teacher at Graysville Elementary School. Due to her failure to meet the requirements of an improvement plan at Graysville, Mrs. Ketchersid was transferred to Rhea Central Elementary School at the beginning of the 2001-2002 school year and placed in charge of a "Title I" classroom of seven third-grade students. These students were identified as being below

their grade level and in need of remedial instruction; the students were not, however, placed in the classroom due to behavioral or discipline problems.

On October 11, 2001, one of Mrs. Ketchersid's students came to assistant principal Buddy Jackson's office in tears, explaining that Mrs. Ketchersid had "smacked her on the face." Assistant Principal Jackson then met with the child and her parents, as well as Mrs. Ketchersid, in an attempt to determine what had happened. The following day, Jackson and Principal Doug Keylon met with Mrs. Ketchersid to discuss her treatment of students. At that time, both Jackson and Keylon stressed to Mrs. Ketchersid the importance of being positive with the children and told her that she was not, under any circumstances, to put her hands on the students.

In February, 2002, another student's parents reported to Principal Keylon that Mrs. Ketchersid had slapped their child. Principal Keylon reported this allegation to Dr. Sue Porter, the Director of Rhea County Schools. On February 12, 2002, Director Porter and Assistant Director Dallas Smith, along with Principal Keylon and Assistant Principal Jackson, interviewed some of the students from Mrs. Ketchersid's classroom on an individual basis. The students informed the administrators that Mrs. Ketchersid would place her hands on their faces when she became angry with them. One student told the group of administrators that Mrs. Ketchersid would often hit him over the head with a soft-cover textbook. More than one student referred to Mrs. Ketchersid having pinched their cheeks when she was angry.

Following these meetings with the students, the administrators brought Mrs. Ketchersid in for a private meeting. When questioned as to whether she had hit students over the head with a book, Mrs. Ketchersid replied that she had done so when she was angry, and she then proceeded to demonstrate by taking a legal pad and tapping Principal Keylon on the head. Mrs. Ketchersid also admitted to placing her hands on the faces of or slapping five out of her seven students. She stated that she did so when she was angry and when the children were being disrespectful. When asked when she had last placed her hands on a student's face, Mrs. Ketchersid admitted that she had done so that very morning. At the conclusion of this meeting with Mrs. Ketchersid, Director Porter informed her that, in light of her "complete insubordination" for failing to follow the directives of Principal Keylon and Assistant Principal Jackson to refrain from placing her hands on the students, she was not to return to her classroom and that she was henceforth suspended without pay.

On March 14, 2002, Director Porter recommended to the School Board that Mrs. Ketchersid be dismissed as a tenured teacher from the Rhea County School System, based upon Mrs. Ketchersid's alleged insubordination, incompetence, inefficiency, and neglect of duty. The School Board then recommended Mrs. Ketchersid's dismissal.

Mrs. Ketchersid requested a hearing before the School Board in order to appeal its decision, which hearing was conducted on July 15, 2002. At the conclusion of the hearing, the School Board determined that the charges of insubordination, incompetence, and inefficiency were supported by the evidence, and the School Board, by a vote of 6 to 2, voted to terminate Mrs. Ketchersid from her tenured position with the Rhea County School System.

Mrs. Ketchersid appealed the School Board's decision to the trial court. After reviewing the record, the trial court found that Mrs. Ketchersid received a fair hearing and that there was sufficient evidence to justify her dismissal. From this judgment, Mrs. Ketchersid appeals.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

## III.

The issues in this case cause us to focus on the following statutory provisions:

*Tenn. Code Ann. § 49-5-501 (2002)*

As used in this part, unless the context otherwise requires:

* * *

(5) "Incompetence" means being incapable, lacking adequate power, capacity or ability to carry out the duties and responsibilities of the position. This may apply to physical, mental, educational, emotional or other personal conditions. It may include lack of training or experience; evident unfitness for service; physical, mental or emotional condition making teacher unfit to instruct or associate with children; or inability to command respect from subordinates or to secure cooperation of those with whom the teacher must work;

(6) "Inefficiency" means being below the standards of efficiency maintained by others currently employed by the board [of education] for similar work, or habitually tardy, inaccurate, or wanting in effective performance of duties;

(7) "Insubordination" may consist of:

(A) Refusal or continued failure to obey the school laws of Tennessee, or to comply with the rules and regulations of the board [of education], or to carry out specific assignments made by the board [of education], the director of schools or the principal, each acting

-3-

within its own jurisdiction, when such rules, regulations and assignments are reasonable and not discriminatory;

* * *

*Tenn. Code Ann. § 49-5-511 (2002)*

(a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed are as follows: incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in § 49-5-501.

(3) A director of schools may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board [of education] or an appeal. If vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses which would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges.

(5) If, in the opinion of the board [of education], charges are of such nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher a written notice of this decision, together with a copy of the charges, and a copy of a form which shall be provided by the commissioner of education advising the teacher as to the teacher's legal duties, rights and recourse under the terms of this part.

* * *

*Tenn. Code Ann. § 49-5-512 (2002)*

(a) A teacher, having received notice of charges pursuant to § 49-5-511, may, within thirty (30) days after receipt of notice, demand a hearing before the board [of education], as follows:

(1) The teacher shall give written notice to the director of schools of the teacher's request for a hearing;

(2) The director of schools shall, within five (5) days after receipt of request, indicate the place of such hearing and set a convenient date, which date shall not be later than thirty (30) days following receipt of notice demanding a hearing;

(3) The teacher may appear at the hearing and plead the teacher's cause in person or by counsel;

(4) The teacher may present witnesses, and shall have full opportunity to present the teacher's contentions and to support them with evidence and argument. The teacher shall be allowed a full, complete, and impartial hearing before the board [of education], including the right to have evidence deemed relevant by the teacher included in the record of the hearing, even if objected to by the person conducting the hearing;

(5) The chair of the board [of education] conducting the hearing is hereby empowered to issue subpoenas for witnesses to compel their attendance at hearings authorized under this section. All parties to the proceeding shall have the right to have subpoenas issued by the chair of the board [of education] to compel the attendance of all witnesses deemed by such parties to be necessary, for a full and complete hearing. All witnesses shall be entitled to the witness fees and mileage provided by law for legal witnesses, which fees and mileage shall be paid as a part of the costs of such proceeding. The costs of such proceeding shall be paid by the losing party;

(6) The chair of the board [of education] shall administer oaths to witnesses, who shall testify under oath;

(7) A record of the hearing, either by transcript, recording, or as is otherwise agreed by the parties, shall be prepared, if the action of the board [of education] is appealed, and all actions of the board [of education] shall be reduced to writing and included in the record, together with all evidence otherwise submitted;

(8) On request of either party to the trial, witnesses may be barred from the hearing except as they are called to testify. The hearing may be private at the request of the teacher or in the discretion of the board [of education]; and

(9) The board [of education] shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision.

(b) The director of schools or other school officials shall not be held liable, personally or officially, when performing their duties in prosecuting charges against any teacher or teachers under this part.

*Tenn. Code Ann. § 49-5-513 (2002)*

(a) A teacher under "permanent tenure" or "limited tenure" status who is dismissed or suspended by action of the board [of education] may petition for a writ of certiorari from the chancery court of the county where the teacher is employed.

* * *

(g) The cause shall stand for trial and shall be heard and determined at the earliest practical date, as one having precedence over other litigation, except suits involving state, county or municipal revenue. The review of the court shall be limited to the written record of the hearing before the board [of education] and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

(h) The chancellor shall reduce the chancellor's findings of fact and conclusions of law to writing and make them parts of the record.

(i) Any party dissatisfied with the decree of the court may appeal as provided by the Tennessee Rules of Appellate Procedure, where the cause shall be heard on the transcript of the record from the chancery court.

IV.

On appeal, Mrs. Ketchersid only asks us to decide whether the trial court erred in its determination that the School Board was justified in dismissing her as a tenured teacher.

The School Board found sufficient evidence to support the charges of insubordination, incompetence, and inefficiency, thereby justifying Mrs. Ketchersid's termination. Insubordination, as defined in Tenn. Code Ann. § 49-5-501(7)(A), includes the "[r]efusal . . . to carry out specific assignments made by . . . the principal." Both Principal Keylon and Assistant Principal Jackson

testified before the School Board that they specifically instructed Mrs. Ketchersid, in October of 2001, to refrain from placing her hands on any of her students again. Mrs. Ketchersid testified that it was her understanding of their instructions that she was not to touch the student who made the October complaint, but that the directive did not extend to the other students in the class. However, she did admit that it made sense that they were instructing her not to touch any of the students. When Mrs. Ketchersid was questioned following the February, 2002, complaint, she admitted that she had continued to place her hands on the students' faces, even as recently as that very morning.

There is no question that Mrs. Ketchersid refused to follow a specific directive from Principal Keylon. *See* Tenn. Code Ann. § 49-5-501(7)(A). We therefore agree with the trial court's finding that "[Mrs.] Ketchersid's refusal to refrain from striking students [is] an insubordinate act as defined by the statute."

The definition of incompetence includes "evident unfitness for service" and possessing a "condition making teacher unfit to instruct or associate with children." Tenn. Code Ann. § 49-5-501(5). Mrs. Ketchersid admitted in the hearing before the School Board that she would place her hands on the children's faces in order to get them to pay attention to her:

> OK the smacking [the children] are referring to is when I took hold of their face, to direct their attention to me, because they wouldn't, they would misbehave and not look at me. They weren't looking at me, they weren't paying attention to the lesson, you know they weren't paying attention, so I took their face to look directly at me and then I think a couple of times I did go pat, pat, pat, but they were like punctuation marks. I was telling the child, I was trying to make them understand that I mean business. That they had to obey me.

Director Porter testified that, when Mrs. Ketchersid was questioned by the administrators on February 12, 2002, she complained that her class of students was "just all bad" and she had "nothing but the bad" students. Director Porter explained to Mrs. Ketchersid that the children were placed in her classroom based on their being below grade level and not due to any discipline problems. Mrs. Ketchersid, however, continued to refer to the children as bad and disrespectful, telling Director Porter that she placed her hands on the children's faces "when [she] gets angry and when [the children] are disrespectful."

As Mrs. Ketchersid was certified to teach – and had taught – K-8 students for over ten years, it is shocking to this court that she felt it necessary to grab the faces of her third-grade students or hit them over their heads with a book in order to get their attention. Certainly, a teacher with that much experience should be capable of controlling her anger and handling her students in a more professional – and safe – manner. Without question, Mrs. Ketchersid's tactics amount to "evident unfitness for service."

There is also sufficient evidence, as found by the trial court, to support a finding of inefficiency, which is defined to include "wanting in effective performance of duties." Tenn. Code Ann. § 49-5-501(6). Assistant Principal Jackson testified before the School Board that, when he had observed Mrs. Ketchersid's classroom prior to her February 12, 2002, suspension, he was forced to call down a child who was misbehaving because Mrs. Ketchersid was doing nothing to control the situation. Jackson stated that he had never had to call down a child before while observing any other classroom. Mrs. Ketchersid even admitted at the hearing that she had failed to appropriately discipline her students and make them behave, in spite of her 24 years of teaching experience. Again, we agree with the trial court's finding that "[Mrs.] Ketchersid's need to resort to such physical tactics, as well as the inability to maintain an orderly classroom, constitutes sufficient evidence of inefficiency and incompetence."

Furthermore, there is ample evidence that the School Board conducted a fair and impartial hearing, dismissing the charge of neglect of duty upon finding that the evidence did not support it. In addition, the School Board, as noted by the trial court, engaged in "extensive discussion and debate as to the appropriate disposition of the case." In light of all of this evidence, we find no error in the trial court's determination that the School Board was justified in dismissing Mrs. Ketchersid.

V.

While Mrs. Ketchersid presents only one issue on appeal, the School Board construes her argument as raising – or attempting to raise – two additional issues, to which the School Board has chosen to respond. First, the School Board asserts that Mrs. Ketchersid "makes a vague allegation that several provisions of the collective bargaining agreement between the [S]chool [B]oard and the teacher's association were violated in this case." Second, the School Board states that Mrs. Ketchersid "argues that she was 'demoted from her job as Kindergarten Teacher at the Graysville Elementary School, prior to there being any charges made against her . . . .'"

With respect to the first issue, our thorough review of the record reveals that at no time did Mrs. Ketchersid raise with the trial court the issue of violations of the collective bargaining agreement. It is well-settled that issues not raised at the trial court level may not be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). However, even if Mrs. Ketchersid had raised this issue below – and we do not believe that she did – she has failed to include a copy of the collective bargaining agreement in the record. Without that document, we are unable to address this purported issue in any event, as there is no proof in the record concerning it.

As to the second issue, there is nothing in the record to indicate that Mrs. Ketchersid ever raised the issue of her "demotion" before the trial court; as such, she is not permitted to raise it now. *See Simpson*, 810 S.W.2d at 153.

## VI.

The judgment of the chancery court is affirmed. This case is remanded for the collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Lee Ketchersid.

_____
CHARLES D. SUSANO, JR., JUDGE