# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 21, 2016 Session

## JACQUELINE HARRISON v. SHELBY COUNTY BOARD OF EDUCATION

**Appeal from the Chancery Court for Shelby County**
**No. CH140585      Walter L. Evans, Chancellor**

_____

**No. W2015-01543-COA-R3-CV – Filed March 30, 2016**
_____

This is a termination of employment case.  Appellant Shelby County Board of Education appeals the trial court's decision to reinstate a tenured teacher whose employment was terminated for inefficiency.  The trial court found that there was insufficient evidence to support a finding of inefficiency.  Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Cecilia S. Barnes, Memphis, Tennessee, for the appellant, Shelby County Board of Education.

Darrell J. O'Neal, Memphis, Tennessee, for the appellee, Jacqueline Harrison.

## OPINION

### I.      Factual and Procedural History

Appellee Jacqueline Harrison was a tenured teacher with the Memphis City Schools, now the Shelby County Board of Education ("SCBE," or "Appellant").  Ms. Harrison taught for approximately twenty-seven years.  She has a degree in English and is certified to teach

English in grades seven through twelve. During her teaching career at Memphis City Schools, Ms. Harrison received only one unsatisfactory evaluation, which was for the 2011-2012 school year, the year at issue here.

Ms. Harrison's last teaching assignment was at Wooddale High School, where she taught for approximately six years. In 2010, Mr. Michael Kyle became the principal at Wooddale. At the time, Wooddale was on the striving schools list, which meant that it was in the bottom five percent of schools in the City of Memphis. During the 2010-2011 school year, Ms. Harrison taught Language X, which was a literacy program for students that were significantly behind in reading. The goal of the class was to bring low tier students up two grade levels in reading. According to Mr. Kyle, the English department was one of his strongest departments in both 2010-2011 and in 2011-2012. Specifically, he testified that the literacy scores were the highest scores that Wooddale received in any subject. Although Ms. Harrison received a satisfactory evaluation for the 2010-2011 school year, Mr. Kyle noted on her evaluation that she needed to strengthen her classroom management.

Following the 2010-2011 school year, Memphis City Schools no longer offered the Language X program at Wooddale. Rather than move Ms. Harrison to another class, Mr. Kyle attempted to move Ms. Harrison to another school. Because she had more seniority than many of the other English teachers at Wooddale, Ms. Harrison filed a grievance regarding Mr. Kyle's attempt to reassign her. Ms. Harrison was successful in her grievance, and as a result, she returned to Wooddale for the 2011-2012 school year. She contends that she began having problems with Mr. Kyle after she successfully thwarted his attempt to have her reassigned to another school.

During the 2011-2012 school year, Ms. Harrison taught African-American Literature and English 10. According to Mr. Kyle, Ms. Harrison immediately began having problems with her classroom. Mr. Kyle testified that Ms. Harrison was unable to control her classroom. He complained that Ms. Harrison made calls to the office for assistance with her students almost daily. Mr. Kyle further complained that she sent many students to the office for unruly behavior and disrupting class when she should have been able to manage these students without assistance from the office. Ms. Harrison responded that several of her students had emotional problems. She also had a block of low functioning students who could not read above a fourth grade level and therefore, it was difficult to create lesson plans that met the needs of all of her students.

The 2011-2012 performance evaluations were released in May 2012. After receiving a poor evaluation for the year, Ms. Harrison's first poor evaluation in twenty-seven years of teaching, Mr. Kyle recommended that Ms. Harrison's employment be terminated due to her lack of classroom management skills and her failure to adhere to district policies. On September 27, 2012, the Board of Education made its initial determination to approve Ms.

Harrison's dismissal on the statutory grounds of "unprofessional conduct" and "inefficiency" as set out in Tennessee Code Annotated Sections 49-5-501(3) and (6). As provided for by Tennessee Code Annotated Section 49-5-512, Ms. Harrison requested a hearing on these charges before an impartial hearing officer. On February 12, 2013, the hearing officer reviewed the charges and concluded that SCBE did not prove that Ms. Harrison had engaged in unprofessional conduct; however, he sustained the charge of inefficiency by failing to maintain control of her classroom. Other than failure to control her classroom, the hearing officer made no other findings supporting the charge of inefficiency against Ms. Harrison. No state test scores or system wide test scores were introduced to show Ms. Harrison's students were performing below the level of other students in English 10 classes taught by other teachers in the Memphis City School System.

On September 17, 2013, the SCBE heard Ms. Harrison's appeal and remanded the case to the hearing officer for further findings about "[t]he school district's policy and/or practice regarding professional development, including, but not limited to, who provides oversight/monitoring to ensure professional development is offered and what actually happened with that process in this case." The remand hearing was held on November 8, 2013. Following the remand hearing, the hearing officer affirmed his initial determination that Ms. Harrison was inefficient as defined by statute. The decision by the hearing officer was upheld by the SCBE on February 25, 2014. Ms. Harrison filed her appeal of the termination decision in Shelby County Chancery Court on April 10, 2014. On June 16, 2015, the trial court entered its findings of fact and conclusions of law. The trial court found that there was insufficient evidence to support the hearing officer's finding of inefficiency. Additionally, the trial court found that there was a disparity between Ms. Harrison's discipline and that of another teacher, Kristen Oshfeldt. Based on these findings, the trial court granted Ms. Harrison's writ of certiorari by order entered June 30, 2015. The trial court reversed the decision of the SCBE and remanded the case to the SCBE for entry of an order reinstating Ms. Harrison as a teacher with full back pay, seniority, and benefits.

## II.    Issues

Appellant presents the following issues on appeal as stated in its brief:

1.    Whether the trial court erred in reversing the decision of the hearing officer sustaining Appellee's termination on the grounds (*sic*) of inefficiency, when the hearing officer had substantial and compelling evidence that Appellee was unable to maintain her classroom or engage her students in meaningful learning?

2.    Whether the trial court erred in reversing the decision of the hearing officer on the basis that there is disparity in the discipline of Appellee

and another teacher, Kristin Ohsfeldt, when there was no evidence in the record before the trial court related to Ohsfeldt's termination or discipline, and the trial court did not specifically find that the disparity was based on a suspect classification?

## III.    Standard of Review

Tennessee Code Annotated Section 49-5-513 provides a tenured teacher, whose employment has been terminated by a school board, the right to a chancery court review of the school board's decision. The chancery court's review of the school board's decision is *de novo* with no presumption of correctness. ***Lee v. Franklin Special Sch. Dist. Bd. of Educ.,*** 237 S.W.3d 322, 329 (Tenn. Ct. App. 2007). Furthermore, the chancery court's review shall be "limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing." Tenn. Code Ann. § 49-5-513(g). "Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." ***Id***.

We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Campbell v. Florida Steel Corp.,*** 919 S.W.2d 26, 35 (Tenn. 1996); ***Crosby v. Holt,*** 320 S.W.3d 805, 813 (Tenn. Ct. App. 2009); ***Ripley v. Anderson Cty. Bd. of Educ.***, 293 S.W.3d 154, 156-57 (Tenn. Ct. App. 2008).

## IV.    Analysis

The primary purpose of the Tenure Act, Tennessee Code Annotated Sections 49-5-501 *et seq.*, is "to protect school teachers from arbitrary demotions and dismissals." ***Cooper v. Williamson Cnty. Bd. of Educ.***, 746 S.W.2d 176, 179 (Tenn. 1987) (quoting ***Snell v. Brothers***, 527 S.W.2d 114, 116 (Tenn. 1975)); ***Thompson v. Memphis Schools Bd. of Educ.***, 395 S.W.3d 616, 623 (Tenn. 2012). In the instant case, the trial court reasoned that the SCBE improperly terminated Ms. Harrison's employment in violation of Tennessee Code Annotated Section 49-5-504(e). The statute states in pertinent part:

> Any teacher who, after acquiring tenure status, receives two (2) consecutive years of evaluations demonstrating an overall performance effectiveness level of "below expectations" or "significantly below expectations," as provided by the evaluation guidelines adopted by the state board of education pursuant to § 49-1-302, shall be returned to probationary status by the director of schools until the teacher has received two (2) consecutive years of evaluations demonstrating an overall performance effectiveness level of "above expectations" or

"significantly above expectations."

Tenn. Code Ann. § 49-5-504 (e). However, Tennessee Code Annotated Section 49-5-504(f) specifically states that "subsection (e) does not apply to teachers who acquired tenure prior to July 1, 2011." Tenn. Code Ann. § 49-5-504(f). Ms. Harrison received tenure in 1989. Therefore, contrary to the trial court's finding, Tennessee Code Annotated Section 49-5-504(e) does not apply in this case. However, this does not end our analysis as we must review whether the record supports the trial court's finding that there was insufficient evidence to support the hearing officer's finding of inefficiency.

Appellant argues that Ms. Harrison's employment was terminated due to inefficiency, which is a proper cause for termination pursuant to Tennessee Code Annotated Section 49-5-511(a)(2). The five exclusive "causes for which a teacher may be dismissed" are "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in §49-5-501." Tenn. Code Ann. § 49-5-511(a)(2); *see* ***Thompson v. Memphis Schools Bd. of Educ***., 395 S.W.3d 616, 623 (Tenn. 2012). Inefficiency is defined as

> being below the standards of efficiency maintained by others currently employed by the board for similar work, or habitually tardy, inaccurate or wanting in effective performance of duties. The definition of inefficiency includes, but is not limited to, having evaluations demonstrating an overall performance effectiveness level that is "below expectations" or "significantly below expectations" as provided in the evaluation guidelines adopted by the state board of education pursuant to § 49-1-302;

Tenn. Code Ann. § 49-5-501(6). Here, the very definition of inefficiency included in the statute uses the plural term "evaluations" rather than the singular "evaluation". When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. ***Eastman Chem. Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004). Applying the plain meaning of the term, we note that Ms. Harrison has only received one evaluation "demonstrating an overall effectiveness level that is "below expectations." Tenn. Code. Ann. §49-5-501(6). The definition of inefficiency is not exclusively limited to having poor evaluations, therefore, the question then becomes whether there is sufficient evidence in the record to support the hearing officer's finding of inefficiency.

Mr. Kyle testified that Ms. Harrison was unable to control her classroom. In addition to complaining about her frequent calls to the office for assistance, Mr. Kyle testified that substitutes had less trouble managing the same students without assistance from the office. Mr. Kyle further testified about an email he allegedly sent Ms. Harrison in late September 2011, in which he advised that he was concerned about her ability to control her classes.

- 5 -

Although the email was cited in the hearing officer's initial opinion, the email submitted into evidence does not list Ms. Harrison as a recipient, nor does her name appear anywhere in the body of the email. The record also shows that Ms. Harrison was absent from school for several weeks due to an injury she sustained at work on October 5, 2011 when she came to the defense of one of her students, and was struck by a chair. There is no other mention of this incident in the record, other than references to her extended absence, and the incident was not discussed in detail by either party. To support the charge of inefficiency, Mr. Kyle testified extensively about books and papers found outside of Ms. Harrison's classroom. Mr. Kyle testified that this incident illustrated how Ms. Harrison was unable to properly supervise or control her students. However, both the hearing officer and the trial court found that no one knows who threw those items outside, and it is possible that the books and paper could have come from another classroom. Also, there were no names in the books to identify the books as being assigned to Ms. Harrison's students.

As part of an overall teacher evaluation process instituted by the SCBE, Ms. Harrison was observed on four separate occasions throughout the school year. Mr. Kyle first observed Ms. Harrison's class on November 21, 2011. Ms. Harrison's subsequent observations were conducted by different administrators at Wooddale. The hearing officer's opinion found that "three of the observers . . . noted that Ms. Harrison had classroom management issues, which contributed to her unsatisfactory evaluation." However, only one of the four post-observation reports entered into evidence suggested professional development for Ms. Harrison. In fact, three of the four post-observation reports did not detail any areas for growth or list any additional considerations for Ms. Harrison.

Appellant relies on ***Ketchersid v. Rhea Cnty. Bd. of Educ***., 174 S.W.3d 163 (Tenn. Ct. App. 2005) in support of its position that inefficiency, in and of itself, is sufficient for termination. In ***Ketchersid***, this Court affirmed the school board's decision to dismiss a tenured teacher. We concluded that the third-grade teacher's inability to maintain an orderly classroom amounted to "inefficiency." ***Id***. at 169. In ***Ketchersid***, the teacher resorted to slapping her third-grade students even after being instructed not to do so. ***Id***. at 168. In its findings of fact and conclusions of law, the trial court distinguished the facts of this case from the facts in ***Ketchersid,*** finding that "unlike Ms. Harrison, the dismissed teacher in ***Ketchersid*** had a prior improvement plan in place to address her performance deficiencies and failed to meet the requirements of the improvement plan."

We now look to the record to analyze the contents of the purported individual professional development plan developed in Ms. Harrison's case. During the 2011-2012 school year, Memphis City Schools had an extensive policy regarding professional development, which was driven by the

radically new and more challenging state standards adopted by the State

of Tennessee as well as the unique challenges faced by students living in a city with the third-highest child poverty rate (42%) in the United States; high rates of mobility (30%); weak literacy skills; a graduation rate of 66.9% in 2008; and widespread poor health indicators that include childhood diabetes and other potentially untreated physical and mental health conditions. Regardless of these challenges, we have an obligation to educate our students. MCS [Memphis City Schools] reform efforts are designed to foster conditions essential for student growth and address the academic, physical, and mental health conditions hindering student achievement. Specifically, through reform efforts the district strives to increase TCAP scores, ACT scores, and high school graduation rates.

MCS Professional Development Policy 5.8034. Both the hearing officer and the trial court rely on this policy to support their findings of fact and conclusions of law.

MCS Professional Development Policy 5.8034 was the governing authority regarding professional development within the school district for the 2011-2012 school year. The purpose of the policy was to ensure that employees were offered meaningful elective and required professional development opportunities that support student academic achievement and ensure district accountability. *Id*. With respect to the action taken in this case, Policy 5.8034 provided that "principals and supervisory personnel are responsible for identifying professional development needs and developing *individual professional development plans* for their employees." *Id*. (emphasis added). This policy is supported by Tennessee Code Annotated Section 49-5-506 which states that

> The local board of education has the authority to set standards of employment or to maintain educational requirements of the personnel in service over and above those required by the state board of education whenever the board is in position to support the superior program; provided, that the requirements are general in their application and have the approval of the state board of education.

Tenn. Code Ann. § 49-5-506. Furthermore, during oral argument, Appellant's attorney conceded that MCS Professional Development Policy 5.8034 required the development of an individual professional development plan prior to termination of a tenured teacher.

Subsequent to the initial hearing, the SCBE remanded the case to the hearing officer for further findings about "[t]he school district's policy and/or practice regarding professional development, including, but not limited to, who provides oversight/monitoring to ensure professional development is offered and what actually happened with that process

in this case." The record shows that Mr. Kyle completed a "professional growth and support plan" form for Ms. Harrison which was entered into evidence during the initial hearing. In the plan, Mr. Kyle outlines three areas for growth: (1) managing student behavior; (2) building a respectful learning-focused classroom community; and (3) engaging students at all learning levels in appropriately challenging work. School board policy requires that the support plan form completed by the administrator/principal detail the administrative support that will be provided to the educator to aid in improvement in each area identified in the plan. Mr. Kyle, however, never recommended a specific individual professional development plan for Ms. Harrison as required by school board policy. Instead, Mr. Kyle simply recited in the support plan form that peer visitations to other teachers in the school, professional learning communities, and team meetings were available to Ms. Harrison. With regard to building a "respectful learning-focused classroom community," Mr. Kyle stated in the support plan form that Title I "may have more funds available for AA literature materials." However, he did not testify that Ms. Harrison actually received the additional funds necessary to improve her classroom. Mr. Kyle's proposed support plan for assisting Ms. Harrison in engaging students at all learning levels in appropriately challenging work was limited to stating that administrative support was available "for any request."

Linda Peete testified at the hearing on behalf of Ms. Harrison. At the time of the hearing, Ms. Peete had worked for Memphis City Schools for twenty-five years. For seven of those years, Ms. Peete worked as an instructional facilitator. Ms. Peete testified that in the case of a struggling teacher, the principal should suggest to the facilitator specific professional development for the teacher involved. Ms. Peete also testified that the facilitators were required to keep a log of all of the services they provided, including professional development activities.

Tondrea McWright testified on behalf of SCBE. Ms. McWright was the instructional curriculum coach during the 2011-2012 school year. Ms. McWright testified concerning Ms. Harrison's reputation as a "great teacher," but noted that there had been a "disconnect . . . this particular year." Although Ms. McWright testified and the hearing officer found that Ms. Harrison received one-on-one assistance from Ms. McWright throughout the 2011-2012 school year, the record does not support this finding. The log introduced into evidence shows that she met with Ms. Harrison and provided a lesson in September of 2011 and met with her one other time in December 2011. Ms. McWright could not recall any written recommendation she made to Ms. Harrison. Additionally, Ms. McWright did not recommend any specific professional development for Ms. Harrison. When asked whether she chose not to recommend professional development or if that was not her responsibility, she responded that she "just didn't really know."

The record is replete with contradictions regarding specific professional development provided to Ms. Harrison during the 2011-2012 school year. Mr. Kyle testified that Ms.

Harrison received help and training from Ms. Cheryl Delaney, MCS coordinator for literacy; Ms. Martha Quijano, High Schools That Work consultant; Ms. Quoeda Lewis, Wooddale facilitator; Ms. Tondrea McWright, MCS curriculum coach; and Dr. Lane Boone, Wooddale literacy coach during the 2011-2012 school year. The hearing officer found that these individuals were responsible for "observing and providing feedback to teachers as well as providing professional development opportunities." However, Ms. Harrison testified that Ms. Delaney helped her organize her classroom once, but did not provide any additional feedback. Early in the school year, Ms. McWright modeled a lesson for purposes of demonstrating student control and lesson flow. However, her own log reveals that she did not follow up with Ms. Harrison again until December. Ms. Harrison testified that the other personnel listed by Mr. Kyle either provided no feedback at all, or simply provided supplies upon her request. Indeed, the evidence suggests that the feedback, if any, may have been provided directly to Mr. Kyle, not Ms. Harrison. The record also contains emails sent by Mr. Kyle to his trainers and facilitators, wherein he discusses the termination of Ms. Harrison's employment in March 2012, although Ms. Harrison's poor performance evaluation was not released until May 2012. After a thorough review, we conclude that the evidence contained in the record does not preponderate against the findings of the trial court regarding the charge of inefficiency.

In this case, it is also clear that Appellant failed to abide by its own policies regarding professional development. In his opinion on remand from the SCBE, the hearing officer specifically noted that "Mr. Kyle did not recommend specific professional development to Ms. Harrison." The professional growth plan submitted by Mr. Kyle contains only boiler-plate catch-phrases about types of support available throughout the district. The plan submitted into evidence is not individualized to Ms. Harrison. Additionally, the plan is not signed by Mr. Kyle, nor did he explain the omission of his signature during his testimony. This form was developed by the Memphis City Schools and has a block where the principal's signature should appear. Based on the evidence, particularly the hearing officer's finding noted above, we cannot conclude that Mr. Kyle developed and implemented an individual professional development plan for Ms. Harrison as required by MCS Professional Development Policy 5.8034 before seeking termination of her employment. After a careful review of the entire record, we agree with the trial court that there is not sufficient evidence to support SCBE's termination of Ms. Harrison's employment. Having determined that the SCBE failed to follow its own policies before seeking termination of a tenured teacher and having determined that there is insufficient evidence in the record to support a finding of inefficiency, we pretermit the issue regarding a violation of Ms. Harrison's Fourteenth Amendment rights.

## V.    Conclusion

For the foregoing reasons, we affirm the trial court's order. This case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this

opinion.  Costs of the appeal are assessed against the Appellant, Shelby County Board of Education and its surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE